## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

LAVARES WATKINS, et al.,                  }
                                          }
          Plaintiffs,                     }
                                          }
v.                                        }          Case No.:  2:10-CV-324-RDP
                                          }
CITY OF HOMEWOOD, et al.,                 }
                                          }
          Defendants.                     }

## MEMORANDUM OPINION

This matter is before the court on the Early Dispositive Motion filed by Defendants Greg
Brundage, Steve Hensley, John Carr, and Kelly Johnson (the "Officer Defendants") (Doc. # 63). The
Motion has been fully briefed.  (Docs. # 64, 70, 78, 81 and 83[1]).

## I.      Background

This case arose out of an incident occurring on July 10, 2009, which began at the Super 8
Motel located on Vulcan Road in the City of Homewood.  (Doc. # 65-6).  That motel and the area
surrounding it are known by the Homewood Police Department to have a history of criminal activity,
including drug crimes. (Docs. # 65-6, 65-7 and 65-9).

Plaintiff LaVares Watkins rented a room at the motel on the afternoon of July 10, 2009, at
around 2:00 p.m.  (Doc. # 65-1 at 60-61).  A few hours later, at around 6:00 p.m., Watkins
telephoned Plaintiff Chris Tucker to ask that Tucker come to the motel to pick him up.  (Doc. # 65-1

---

[1] The court is somewhat puzzled by Plaintiffs' Response to Defendants' Amendment to Early
Dispositive Motions because, in that response, Plaintiffs present argument on claims which, although
they were contained in Plaintiffs' original Complaint, were later dismissed by agreement of the
parties after a status conference with the court and after Plaintiffs filed their Amended Complaint.
(Doc. # 26).

at 69-73).  Plaintiff Kalvin Lowe accompanied Tucker on the ride to pick up Watkins.  (Doc. # 65-1 at 59-62).

Watkins was waiting for Tucker by the back door of the motel which led to the parking lot. (Doc. # 65-1 at 69-72).  When Tucker and Lowe arrived at the motel parking lot, they were aware that they were being observed in the parking lot by two undercover Homewood police officers, Defendants Justin Self and Kelly Johnson.  (Docs. # 65-7 and 65-1 at 148-52).  Officers Self and Johnson, who were participants in a street crimes task force unit of the Homewood police department, were patrolling the motels in the area, including the motel where Watkins had rented a room. (Doc. # 65-7).

Watkins got into Tucker's car in the back seat behind the driver.  (Doc. # 65-1 at 73-75). Tucker drove and Lowe sat in the front passenger's seat. (Doc. # 65-1 at 96).  Officers Self and Johnson observed Watkins get into Tucker's car.  (Docs. # 65-7, 65-2 at 84-86; 65-3 at 67-70). Watkins, a convicted felon, was in possession of a loaded, stolen gun at the time (Doc. # 65-1 at 75-79), and he was aware that it was illegal for a felon to be in possession of a gun.  (Doc. # 65-1 at 81-82).

Officers Self and Johnson observed Watkins exit the back door of the motel and, in light of the criminal activity in the area, were suspicious of Plaintiffs.  (Doc. # 65-7).  Therefore, they followed Plaintiffs as they left the motel.  (Doc. # 65-7).  A short distance later, while still in the city limits of Homewood, Officers Self and Johnson observed Tucker fail to signal for a turn at an intersection.  (Doc. # 65-7).  Officers Self and Johnson, who were in an unmarked car, radioed for assistance from a "marked" patrol car.  (Doc. # 65-7).

Defendant John Carr was one of the officers who responded to the call for assistance. (Docs # 65-7 and 65-9).   Shortly thereafter, Carr and Johnson observed Tucker driving in Homewood in excess of the posted speed limit.  (Docs # 65-7 and 65-9).  Defendants initiated the subject traffic stop a short distance after Plaintiffs crossed into the city of Birmingham, which is in the same county as Homewood.   (Docs # 65-7, 65-9, 65-10, and 65-11 at 294-95).

As Officer Hensley, who was in the "marked" car, approached the driver's side of the vehicle to obtain Tucker's license information, he noticed Watkins in the back seat of the car.  (Doc. # 65-10).  Hensley perceived that Watkins's body was rigid, he was sweating heavily and breathing hard, and his right hand was out of Hensley's sight.  (Doc. # 65-10).  Officer Carr similarly perceived Watkins to be nervous, and saw him moving around in the back seat of the car.  (Doc. # 65-9).  In fact, Watkins was in possession of a concealed gun at the time.  (Doc. # 65-5 at 130-31).

Tucker produced his driver's license, and Watkins and Lowe were asked their social security numbers to verify their identification.  (Doc. # 65-2 at 115-16 and 118-19).  When the officers first attempted to verify Watkins's social security number, the number he provided belonged to someone else.  (Docs. # 65-2 at 119-20 and 65-10).  After requesting the number again, the officers received the correct number, and learned that Watkins was on probation for a felony robbery conviction. (Docs. # 65-9 and 65-10).

Officer Hensley asked Tucker to step out of the car to talk about the traffic stop.  Tucker complied.  (Docs. # 65-10 and 65-2 at 220).  However, Tucker questioned why he had been stopped, became agitated, and told Hensley to write whatever tickets he wanted to.  (Doc. # 65-10). Officer Hensley placed Tucker to the back seat of the "marked" car to allow Officer Carr to begin writing the traffic citation for speeding.  (Doc. # 65-10).

3

Based on his observations of Watkins's behavior in the car, Officer Hensley was concerned that Watkins was trying to hide something. (Doc. # 65-10). Therefore, Hensley asked Watkins to step out of the car. (Doc. # 65-10).

As soon as Hensley opened the car door, Watkins jumped from the car and immediately began to run away, leaving Lowe in the front passenger's seat. (Docs. # 65-7, 65-9, 65-10, and 65-5 at 105). Watkins admits that he ran when Officer Hensley asked him to get out of the car because he knew it was illegal for him to have a gun, and he wanted to get rid of it. (Doc. # 65-1 at 130-31).

Officers Self, Hensley, Carr, and Johnson pursued Watkins as he fled. (Docs. # 65-7, 65-9, and 65-10). Another officer, Greg Brundage, remained at the scene of the traffic stop to keep watch on Tucker and Lowe. (Doc. # 65-11 at 343). The officers chased Watkins as he crossed the street and continued to run around the rear of a building. (Docs. # 65-9, 65-10, 65-2 at 146-47, and 65-5 at 110-11). As he was running away, Watkins pulled out his gun. (Doc. # 65-1 at 140-142). The officers saw Watkins holding the gun and thought that he was pointing it at them. (Docs. # 65-1 at140-42, 65-7, 65-9, 65-10, and 65-11 at 342-45). At least one of the officers, Carr, saw Watkins's hand move in a manner which was consistent with him trying to pull the trigger as he pointed it at them. (Doc. # 65-9).

Watkins claims that, at some point during his run, he threw the gun away. Nevertheless, he continued to run and, eventually, ran straight at Sgt. Brundage who was pointing his gun at Watkins and repeatedly shouting for Watkins to get down on the ground. (Docs. # 65-1 at 148, 65-12 at 122-24, 65-7, 65-9, 65-10 and 65-11 at 342-50). Watkins did not stop running until he was within five to ten feet of Brundage. (Docs. # 65-1 at 150-55, 65-2 at 161-62, 65-5 at 113-17, 65-12 at 142-46).

4

As Watkins was running at him, Sgt. Brundage's gun discharged, grazing Watkins's forehead. (Doc. # 65-11 at 313-14). Following the gunshot, Watkins and Sgt. Brundage fell to the ground. (Docs. # 65-9, 65-10, and 65-11 at 350-51). The officers who had been chasing Watkins ran to assist Brundage and ensure Watkins was handcuffed and taken into custody. (Docs. # 65-1 at 164-65, 65-7, 65-9, 65-10, and 65-11 at 351-53).

Watkins claims that the officers beat him about his head and body both before and after he was handcuffed, while his forehead was bleeding from the gunshot wound. (Doc. # 65-12 at 37-38).[2] Watkins further claims that the officers lifted him off the ground by his arms while they were handcuffed behind his back and slammed him against a wire fence which gave way due to the force. (Doc. # 65-5 at 126-29).

After Watkins was in custody, Lowe claims that one of the officers, whom he cannot identify, removed him from Tucker's car, pointed a gun at him, forced him to the ground, and twisted his arm as he handcuffed Lowe. (Doc. # 65-5 at 126-29 and 173). Similarly, Tucker claims that one of the officers, whom he cannot identify, pushed him forward in the marked car, pushing his head into the divider separating the front and back seats, as he handcuffed him. (Doc. # 65-2 at 170-72, 197-201, and 219-20).

Tucker's car was then searched and marijuana, a set of digital scales, and an array of gun ammunition were found. (Docs. # 65-13, 65-11 at 356-57).

_____

[2] Certain evidence cited by Plaintiffs in support of their Opposition to Defendants' Motion was never properly filed with the court despite a mid-January 2012 e-mail from court staff to Plaintiffs' counsel informing him that he failed to properly file the evidentiary materials with the court's CM/ECF system.

Plaintiffs have all admitted that they can present no evidence in support of their claim that Defendants communicated with each other or conspired in any way to hurt or harm them or deprive them of any rights, and the record is devoid of any such evidence.  (Docs. # 65-1 at 197-98, 65-2 at 183, 65-5 at 143).

Homewood's Police Department has policies and procedures governing traffic stops, arrests, and the use of force.  (Doc. # 65-14).  Its officers, including Defendants, have received instruction, training, and supervision on these policies and procedures and similar law enforcement and functions.  (Docs. # 65-14A, 65-15 and 65-11 at 156-57, 171, 178, 187-88, 199-200, and 330-31). The police department also has an internal affairs division which investigates citizen complaints of police officer misconduct and disciplines officers determined to have violated policy.  (Doc. # 65-15).

Following this traffic stop, Tucker was charged with the criminal offenses of speeding and unlawful possession of marijuana. (Docs. #65-4 and 65-18).  In the criminal case against Tucker, he moved the trial court to hold that the traffic stop was unlawful because it was made without probable cause, and to suppress the evidence obtained during the search of the vehicle as being unlawfully obtained.  (Doc. # 81-1).  The trial judge denied these motions.  (Doc. # 81-2).  In May 2011, a jury of the Circuit Court of Jefferson County, Alabama, found Tucker guilty of speeding and unlawful possession of marijuana. (Docs. # 65-3 and 65-4). On or about August 5, 2011, Tucker was sentenced to 15 years in prison on his drug conviction, and he is currently serving that time with the Jefferson County Community Service Program.  (Doc. # 79-1).

Tucker did not appeal either his speeding or his drug conviction, and the time for an appeal has long expired.  (Docs. #81- 2 and 85-3).  Neither Tucker's conviction nor sentence has been

reversed on appeal, or otherwise declared invalid, or called into question by a writ of habeas corpus. (Docs. #81- 2 and 85-3).

In November 2009, Watkins was indicted by a Jefferson County, Alabama Grand Jury for attempted murder in relation to his conduct during the traffic stop at issue. (Doc. # 65-16). The trial of that case is scheduled for April of this year.

## II.    Applicable Legal Standards

### A.    Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the

evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

### B.     General Principles of Qualified Immunity

"The doctrine of qualified immunity provides that government officials performing discretionary functions generally are shielded from liability for civil damages" unless they have violated a clearly established constitutional right. *Townsend v. Jefferson County.*, 601 F.3d 1152, 1157 (11th Cir. 2010) (citation and internal quotation marks omitted). The purpose of qualified immunity is to allow officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, *Anderson v. Creighton*, 483 U.S. 635, 638–39 (1987), "protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal citation and quotation marks omitted).

A qualified immunity determination requires the application of a multi-part test. First, a defendant must establish that he was acting within his discretionary authority as a public employee when the conduct in question occurred. *Townsend*, 601 F.3d at 1158.  Next, a plaintiff must demonstrate "'that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation.'" *Id.* (quoting *Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004)).

In previous years, this two-step inquiry had to be conducted in order. That is, the court had to decide whether a right existed (and whether it was violated) before deciding whether it was clearly established. Now, courts may "'exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first.'"  *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

### III.    Analysis

#### A.    Plaintiffs' Claims

Plaintiffs' Amended Complaint contains the following claims:

1.    Count I - an Excessive Force Claim under 42 U.S.C. § 1983 against Officers Carr[3], Self[4], Hensley, Johnson and Brundage, Individually;

2.    Count II - an Unlawful Arrest and/or Detention claim  under 42 U.S.C. § 1983 against Officers Johnson, Self, Carr, Brundage and Hensley;

3.    Count III - a Conspiracy Claim  under 42 U.S.C. § 1983 against Officers Johnson, Carr, Self, Hensley, and Brundage;

4.    Count IV - a Failure to Supervise Claim against the City of Homewood and Chief Phillip Dodd;

5.    Count V - an Assault and Battery Claim against Officers Johnson Carr, Self, Hensley, and Brundage acting in the official capacities; and

6.    Count VI - an Assault and Battery Claim against the City of Homewood based on a vicarious liability theory.

---

[3] The Title of Count I lists Johnson twice, and not Carr, but the body of the Count lists Carr as a defendant, so the court will construe the Count as being stated against Carr.

[4] The claims against Office Self were severed and stayed due to his military service.  (Doc. # 46 at 2).   However, he recently filed a notice that he had returned from military duty.  (Case No. 2:11-CV-00734-RDP, Doc. # 3).  Plaintiffs will be ordered to show cause why their claims against Officer Self, and the court's analysis of those claims, would differ from the court's treatment of the same claims against the Officers in this case.

Counts I, II, III and V are stated against the Officer Defendants.[5]  The court will address these claims in reverse order.

## B.        The Assault and Battery Claim - Count V

Count V asserts an assault and battery claim against the Officers in their official capacities.[6] Count VI asserts an assault and battery claim against the City based on the conduct of the Officers in their official capacities. "We start with the proposition that a suit against a governmental official in his official capacity is deemed a suit against the entity that he represents."  *Brown v. Neumann* 188 F.3d 1289. 1290 (11th Cir. 1999) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985))  "[C]laims against [the] officers in their official capacity are 'functionally equivalent' to claims against the entity they represent." *Haley v. Barbour County*, 885 So.2d 783, 788 (Ala. 2004); *see also Ex parte Daniels*, 941 So.2d 251, 254 (Ala. 2006).   Therefore, Counts V and VI are essentially the same claim, and Count V is duplicative of Count VI.

Under Alabama Code § 11-47-190, a municipality (along with its officers in their official capacities) is immune from tort liability "unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty." This statute limits a municipality's liability for the acts of its agents to those acts that are negligent, careless, or unskillful. Section 11-47-190 provides a municipality immunity from liability for the acts of its agents that are

---

[5] The claims against the City of Homewood and Chief Phillip Dodd will be addressed by separate opinion and order.

[6] Count V of the Amended Complaint alleges that "Defendant Officers Johnson, Carr, Self, Hensley and Brundage exercising their position of authority and acting under color of state law in their capacity as a public official and representative of the City of Homewood and Homewood Police Department assaulted and batter Plaintiffs ... ."  (Doc. # 26 at 18).

carried out in bad faith or with malice. *Borders v. City of Huntsville*, 875 So.2d 1168, 1183 (Ala. 2003) (quoting *Ex parte City of Gadsden*, 718 So.2d 716, 721 (Ala.1998)).  In this vein, Plaintiffs' assault and battery claim against the Officers in their official capacities alleges willful, wanton and intentional conduct.  (Doc. # 26 at 18).  Because the claim is based on alleged intentional conduct, the City and the Officers in their official capacities are immune from this claim, and they are entitled to summary judgment on it.[7]

### C.     The § 1983 Conspiracy Claim - Count III

In order to prove a § 1983 conspiracy claim, "a plaintiff must show that the parties reached an understanding to deny a plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy."  *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir.) (internal quotation marks omitted), *cert. denied*, 506 U.S. 832 (1992). It is not necessary to produce a "smoking gun" to show an "understanding" or "willful participation," but there must be some evidence of an agreement between defendants to show a conspiracy.  *Rowe v. Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002); *see also Bailey*, 956 F.2d at 1122.  "[T]he linchpin for conspiracy is agreement, which presupposes communication." *Id.*  Furthermore, "[i]n order to prevail

---

[7] Moreover, to the extent Plaintiffs' state law assault and battery claims seeks damages against the Officers in their official capacities, and thus against the City, they are entitled to no relief for a separate and alternative reason.  Pursuant to Ala.Code §§ 11-47-23 and 11-47-192, no claim will lie against a city or town for personal injury unless a sworn statement by the party injured is filed with the city clerk within six months of the date of injury.  The record is devoid of any mention of such a statement. The law is well-settled in Alabama that a sworn statement is a prerequisite before a suit against a city or municipality is allowed to proceed. See *Shows v. Morgan*, 40 F.Supp.2d 1345, 1365 (M.D. Ala.1999) (dismissing state law claims against city and its officers in their official capacity because of plaintiff's failure to comply with Alabama's notice-of-claim statutes); *Poe v. Grove Hill Mem'l Hosp. Bd.*, 441 So.2d 861, 863 (Ala. 1983) ("Therefore, to satisfy the statutory requirement, a plaintiff in a tort action against a municipality must file a sworn statement with the clerk within six months from the accrual of the claim."); *see also Cox v. City of Birmingham*, 518 So.2d 1262, 1264 (Ala.1987) (statement must be sworn).

on a § 1983 conspiracy claim, a plaintiff must establish that Defendants agreed to commit an unlawful act." *Edmonson v. County of Van Zandt*, 15 F.3d 180 (5th Cir. 1994) (citing *Crowe v. Lucas*, 595 F.2d 985, 993 (5th Cir.1979)).

Here, the only proof of communication was a request for assistance from the officers in the unmarked car following Plaintiffs to the officers in a marked car.  Even Plaintiffs concede they have no evidence which might show an agreement to injure Plaintiffs in any way, deprive them of any rights, or commit any illegal act.    (Docs. # 65-1 at 197-98, 65-2 at 183, 65-5 at 143).  Therefore, the Officer Defendants are entitled to summary judgment on Count III, the § 1983 Conspiracy Claim.

**D.**     **The § 1983 Unlawful Arrest and/or Detention Claim - Count II**

> **1.**     **Plaintiff Tucker's Unlawful Arrest and/or Detention Claim is Barred By** *Heck v. Humphrey*

On this claim, the Officer Defendants filed an Amendment to Early Dispositive Motions based upon the outcome of the criminal proceedings against Plaintiff Tucker in state court.  As a result of the traffic stop at issue, Tucker was charged with speeding and unlawful possession of marijuana.  Tucker has been convicted of those offenses and sentenced.  He did not appeal those convictions, nor have they been declared invalid or otherwise called into question.  Moreover, in the criminal case against him, Tucker moved the trial court to hold that the traffic stop was unlawful because it was allegedly made without probable cause, and to suppress the evidence obtained during the search of the vehicle as being unlawfully obtained.  (Doc. # 81-1).  The trial judge denied these motions.  (Doc. # 81-2).

The Officer Defendants argue that Plaintiff Tucker's claim is barred by the holding in *Heck v. Humphrey*, 512 U.S. 477 (1994), because of his state-court conviction for speeding and unlawful

12

possession of marijuana.   Under *Heck*, where a judgment in favor of a § 1983 plaintiff would necessarily imply the invalidity of his conviction or sentence, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. *Heck*, 512 U.S. at 486-87.  Because a judgment in favor of Tucker on his unlawful arrest and detention claim under §1983 would call into question the validity of his speeding and unlawful possession of marijuana convictions, his §1983 claim must be dismissed under *Heck*.  The unlawful arrest and detention claims are based on Plaintiffs' assertion that the Officers did not have reasonable grounds to stop or probable cause to arrest Tucker.   However, reasonable grounds to stop and probable cause for Tucker's arrest were necessary elements of the speeding and unlawful possession of marijuana charges of which Tucker was convicted.  Therefore, under *Heck*, the Officer Defendants are entitled to summary judgment on Tucker's  unlawful arrest and detention claim under §1983. *Heck*, 512 U.S. at 486-87.[8]

### 2.       The Other Plaintiffs' Unlawful Arrest and/or Detention Claims

The parties are in agreement that Plaintiffs' unlawful stop and detention claims are properly analyzed under the Fourth Amendment.  (Doc. # 64 at 14; Doc. # 70 at 15).  The Fourth Amendment provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause...." *U.S. Const. amend. IV.*   "The temporary detention of individuals during the stop

---

[8] This same analysis does not apply to Tucker's excessive force claim under Count I.  The Eleventh Circuit has "previously allowed § 1983 suits for excessive force to proceed in the face of a *Heck* challenge." *Dyer v. Lee*, 488 F.3d 876, 881 (11th Cir. 2007) (citing *Willingham v. Loughnan*, 261 F.3d 1178, 1183 (11th Cir. 2001) ("[A] finding of excessive force by the jury in this civil case does not necessarily call into question the validity of section 1983 Plaintiff's criminal conviction ... .").

of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *United States v. Allen*, 274 F. App'x 811, 817 (11th Cir. 2008) (unpublished decision) (citing *Whren v. United States*, 517 U.S. 806, 809–10 (1996)). "Such an automobile stop is reasonable and constitutional, however, if it is based on either probable cause to believe that a traffic violation has occurred or reasonable suspicion that a crime has been or will be committed." *Allen*, 274 F. App'x at 817–18 (citing *United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003)). The state court judge and jury have already determined that there was probable cause for the traffic stop. (Docs. # 81-1 and 81-2).

In *Pennsylvania v. Mimms*, 434 U.S. 106 (1977), "the Supreme Court held that 'once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.'" *Arizona v. Johnson*, 555 U.S. 323, 331 (2009) (quoting *Mimms,* 434 U.S., at 111, n. 6). In *Maryland v. Wilson*, 519 U.S. 408 (1997), the Supreme Court further held "that the *Mimms* rule applied to passengers as well as to drivers. Specifically, the Court instructed that 'an officer making a traffic stop may order passengers to get out of the car pending completion of the stop.'" *Johnson*, 555 U.S. at 331 (quoting *Wilson*, 519 U.S. at 415). Thus, the initial stop and detention of all Plaintiffs was lawful.

It was at this stage during the traffic stop where the undisputed evidence shows that events changed materially, and that turn of events fully justified the further search of the vehicle, the brief detention of Tucker and Lowe, and Watkins's arrest.

After stopping the vehicle and running the occupants' social security numbers, the officers were aware that Watkins was a convicted felon on probation. He was observed in the car acting in

a nervous manner and appeared to be hiding something.  As soon as Watkins was asked to step out

of the car, and Hensley opened the car door for him, Watkins jumped from the car and immediately

ran away, carrying a gun.  Watkins has admitted it was his intention to get rid of the gun.  (Doc. #

65-1 at 130-31). Title 18, U.S.C. § 922(g)(1) makes it unlawful for convicted felons possess any

firearm. At that point, Tucker and Lowe were briefly detained while Watkins was pursued and

arrested, an arrest for which there is no doubt there was adequate probable cause.[9]  Tucker and Lowe

were later released at the scene.  (Docs. # 65-2 at 180 and 65-5 at 36, 79).

The defense of qualified immunity is available to the Officer Defendants if they had

"arguable probable cause" to conduct the traffic stop and to arrest Watkins. *Lee v. Ferraro*, 284 F.3d

1188, 1195 (11th Cir. 2002).  In this case it is clear that the Officer Defendants had not only arguable

probable cause, but also actual probable cause to effect the stop of Tucker, the detentions, and the

arrest of Watkins during the subject incident.  Therefore, the Officer Defendants are entitled to

summary judgment on this claim.

### E.      The § 1983 Excessive Force Claim - Count I

All of the Plaintiffs have asserted a claim for excessive force.  Because Tucker and Lowe

were not arrested at the scene, the analysis for excessive force in their cases differs from the analysis

for excessive force in the case of Watkins, who was in fact arrested.

The Fourth Amendment's "objective reasonableness" standard governs whether a use of force

is constitutionally excessive. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008); *see also*

*Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002).  The reasonableness inquiry requires the court

---

[9] That is, there was reasonable probable cause to arrest Watkins for either a § 922(g) violation
or attempted murder.  Watkins was indicted by a grand jury for attempted murder relating to this
incident.  (Doc. # 65-16).

to "carefully balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against 'the countervailing governmental interests at stake.'" *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

First, to determine whether the force applied was reasonable, the court must look "at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balances the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009). The amount of force used should be measured against "the severity of the crime at issue; whether the suspect poses an immediate threat to the safety of the officers or others; and whether he is actively resisting arrest or attempting to evade arrest by flight." *Oliver*, 586 F.3d at 905 (citing *Lee*, 284 F.3d at 1197–98); *see also McCullough*, 559 F.3d at 1206.

Second, the court must consider "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, [and] (3) the extent of the injury inflicted." *Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir.1986), *abrogated in part by Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir.2000) (recognizing that *Leslie's* fourth factor, the subjective inquiry into the officer's motive, was invalidated by *Graham* ); *see also Lee*, 284 F.3d at 1198 n. 7 (discussing the continuing validity of the other three Leslie factors). Generally, "more force is appropriate for a more serious offense and less force is appropriate for a less serious one." *Lee*, 284 F.3d at 1198. However, "the application of *de minimis* force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin*, 207 F.3d at 1257.

Third, "[F]ourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical

16

coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. Furthermore, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment. *Id.* (citation and internal quotation marks omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Id.* Therefore, "[u]se of force must be judged on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (citation and internal quotation marks omitted).

Finally, and as it turns out here importantly, in conducting the reasonableness inquiry based on Plaintiffs' facts, the Eleventh Circuit has recognized that an officer's use of force is more likely to be unlawful when it occurs "after the arrest [has] been fully effected, the arrestee completely secured, and all danger vitiated." *Lee*, 284 F.3d at 1199–1200.

### 1. Tucker and Lowe's Excessive Force Claims

Neither Tucker nor Lowe allege that any force was used against them until Watkins attempted to flee the scene while actively engaging in a crime and attempting to dispose of the evidence of that crime. Specifically, the Rule 56 evidence shows that it was only after Watkins, a felon with a gun began his flight, that the Officer Defendants used any force against Tucker and Lowe. Lowe claims that one of the officers, whom he cannot identify, removed him from Tucker's car, pointed a gun at him, forced him to the ground, and twisted his arm as he handcuffed him. (Doc. # 65-5 at 126-29 and 173). Similarly, Tucker claims that one of the officers, whom he cannot identify, pushed him forward in the marked car, pushing his head into the divider separating the front

and back seats, as he handcuffed him.  (Doc. # 65-2 at 170-72, 197-201, and 219-20).  These

assertions amount to no more than *de minimis* force, particularly in light of the fact that Tucker had

been driving, and Lowe had been riding in the car with, Watkins, a felon who had just attempted to

flee with a gun.  (Doc. # 65-1 at 130-31).  *See Vinyard v. Wilson*, 311 F.3d 1340, 1344, 1348 n.13

(11th Cir. 2002) (concluding force was *de minimis* when officer dragged plaintiff inside jail,

following arrest, "either by her shirt, her arm, or her hair"); *Jones v. City of Dothan, Ala.*, 121 F.3d

1456, 1460 (11th Cir. 1997) (concluding force was *de minimis* when officers "slammed" plaintiff

against wall).  Thus, even when the facts are taken in the light most favorable to Tucker and Lowe,

they have not demonstrated a Fourth Amendment violation of their right to be free from excessive

force.[10]

### 2.    Watkins's Excessive Force Claim

The Eleventh Circuit "has made clear that some use of force by a police officer when making

a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense."

*Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003). "In the Eleventh Circuit, [courts]

---

[10] Alternatively, the officers are entitled to qualified immunity on Tucker and Lowe's excessive force claims because the force alleged to have been used by them was not unreasonable under the circumstances (and a reasonable officer in their circumstances would not have realized that the force used violated clearly established law).  To determine whether the amount of force was proper the court must ask whether a reasonable officer at the scene would have believed that the level of force used was necessary in the situation. *Zivojinovich v. Barner*, 525 F.3d 1059, 1072 (11th Cir. 2008).  Where more than *de minimis* force is used, courts assess the reasonableness of the force according to the facts and circumstances of the case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Lee v. Ferraro*, 284 F.3d 1188, 1197–98 (11th Cir. 2002) (quotation omitted).  Thus, even if the force used against Tucker and Lowe was more than *de minimis*, and to be clear it was not, a reasonable officer at the scene would have believed that the alleged level of force used was necessary under the circumstances to contain Tucker and Lowe so that Watkins could be pursued and apprehended.

recognize that the typical arrest involves some force and injury." *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002). For even minor offenses, police officers are authorized to use physical restraint, handcuffs, and to push suspects. *See, e.g., Nolin*, 207 F.3d at 1257 (no constitutional violation to grab suspect, push him against a van, search his groin in an uncomfortable manner, and place him in handcuffs); *Jones v. City of Dothan*, 121 F.3d 1456, 1460 (11th Cir. 1997) (per curiam) (no constitutional violation to slam plaintiff against wall, kick plaintiff's legs apart, and require plaintiff to raise arms above his head); *Gold v. City of Miami*, 121 F.3d 1442, 1446–47 (11th Cir. 1997) (per curiam) (no constitutional violation for affixing handcuffs too tightly on disorderly conduct arrestee); *Post v. City of Fort Lauderdale, Fla.*, 7 F .3d 1552, 1559-60 (11th Cir. 1993) (not excessive force to arrest a plaintiff for building code violation by pushing him against a wall, applying a chokehold, and handcuffing him even though plaintiff was not resisting).

In the context of deadly force, the Supreme Court has set out examples of factors that justify the use of such force:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon ... deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985).

The Rule 56 evidence makes plain that the force used against Watkins falls somewhere between *de minimis* and deadly. "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, ... determining whether the use of a particular type of force in a particular situation is reasonable in the constitutional sense requires a court to balance the nature and quality of the intrusion on the individual's Fourth Amendment

interests against the importance of the governmental interests alleged to justify the intrusion." *Long v. Slaton*, 508 F.3d 576, 580 (11th Cir. 2007) (internal quotations and citations omitted). " In examining whether an officer's use of [] force is reasonable, we recognize that 'police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation.' *Graham*, 109 S.Ct. at 1872. So '[w]e are loath to second-guess the decisions made by police officers in the field.' *Vaughan v. Cox*, 343 F.3d 1323, 1331 (11th Cir. 2003)." *Long*, 508 F.3d at 580.

Based on the circumstances presented in this case, the court concludes that the force used against Watkins *prior to the time he was handcuffed*, was objectively reasonable under the Fourth Amendment and the Officers are entitled to qualified immunity. The first factor is the severity of the crime at issue. *Graham*, 490 U.S. at 396. Watkins was a convicted felon in possession of a gun when asked to step out of the vehicle. Thereafter, he was a felon fleeing in possession of a gun running across a street toward a crowd of people and then running back directly toward one of the officers, all the while refusing the officers' repeated direction for him to stop. Although Watkins claims he was successful in disposing of the weapon which was evidence of a crime, the Officer Defendants believed Watkins still had his gun and even believed he had pointed the gun at them and attempted to fire it.

The second factor is whether Watkins posed an immediate threat to the safety of the officers or others. *See Graham*, 490 U.S. at 396. It was reasonable for the officers on the scene, who found it necessary to pursue the convicted felon as he fled with a gun, to conclude that Watkins posed an immediate threat of serious physical harm.[11]

---

[11]Again, a grand jury indicted Watkins of attempted murder related to these events.

The third factor is whether Watkins was actively resisting arrest or attempting to evade by flight. *See Graham*, 490 U.S. at 396. This factor is clearly met.  When asked to step out of the car, Watkins attempted to evade arrest by flight and attempted to dispose of evidence of a crime.

Although Officer Brundage denies deliberately firing his weapon at Watkins, we must take as true Watkins's allegation that he did.  Admittedly, the decision to fire the weapon risked Watkins's death, but that decision was not outside the range of reasonableness in the light of the potential danger posed to officers and to the public. "[T]he question then is whether, given the circumstances, Watkins would have appeared to reasonable police officers to have been gravely dangerous."  *Pace v. Capobianco*, 283 F.3d 1275, 1281 (11th Cir. 2002).  Considering the circumstances of this case, without question, the answer is "yes."

"[T]he law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect." *Long*, 508 F.3d at 581 (citing *Pace*, 283 F.3d at 1282).  "The Supreme Court also has noted that providing a warning to a fleeing suspect weighs in favor of the reasonableness of using deadly force." *Long*, 508 F.3d at 581 (citing *Garner*, 471 U.S. at 11-12).  Watkins admits that, as he was running at Officer Brundage, Brundage had his weapon drawn, pointing it at Watkins, and was repeatedly yelling at him to get down or lie down.  (Doc. # 65-1 at 153).

After the shot was fired, it grazed Watkins's head and he fell to the ground, where a number of officers hit him and wrestled with him until he was handcuffed.  Up to the point where Watkins was handcuffed, the court is unable to conclude that the force used to effect his arrest was unreasonable.  Thus, until Watkins was handcuffed, there simply was no constitutional violation. However, even if there was a violation, the officers are entitled to qualified immunity because their

21

conduct did not violate a constitutional right that was clearly established at the time.  *See, e.g.,  Zivojinovich v. Barner*, 525 F.3d 1059, 1072 (11th Cir. 2008) (Sheriff's deputies were entitled to qualified immunity despite having struck the plaintiff in the face causing a broken nose and having used a taser which caused the plaintiff's legs to give out because the deputies' conduct was reasonably proportionate to the need for force in light of plaintiff's resistance to the arrest).  The reasonable officer faced with these circumstances would not have understood that the force used here violated clearly established law.  Accordingly, the officers are entitled to qualified  immunity on Watkins's excessive force claim up to the time he was handcuffed.

However, Watkins also claims that the Officers, generally, continued to beat him after he was handcuffed.  Watkins further claims that the officers lifted him off the ground by his arms while they were handcuffed behind his back and slammed him against a wire fence which gave way due to the force.  (Doc. # 65-5 at 126-29).  After an arrest is effectuated and the arrestee is secured, the use of force is more likely to be unlawful. *Lee*, 284 F.3d at 1199-1200. At this point, Watkins was in custody, unable to resist or commit a crime, and no longer posed an immediate threat to the safety of the officers or others.  Watkins claims he was also no longer resisting arrest.

The Eleventh Circuit has made clear that "a handcuffed, non-resisting defendant's right to be free from excessive force [is] clearly established." *Hadley v. Gutierrez*, 526 F.3d 1324, 1333 (11th Cir. 2008); *see also Galvez v. Bruce*, 552 F.3d 1238, 1244–45 (11th Cir. 2008) (allowing excessive force claim to proceed where officer slammed a suspect into a concrete structure after he was handcuffed, posed no risk or danger of flight, and offered no resistance); *Reese v. Herbert*, 527 F.3d 1253, 1274 (11th Cir. 2008) (allowing excessive force claim against police officers where defendant was beaten and sprayed with pepper spray while lying face down on the ground, posed no danger of

22

immediate harm to anyone, and was not actively resisting arrest).  In 2009, the Officers would have had fair warning that continuing to beat an arrestee who was handcuffed, bleeding from a gunshot wound to the head, lying on the ground and not resisting arrest would violate that arrestee's Fourth Amendment rights.

Although the Officers deny Watkins's allegation that any sort of force was used against him after he was handcuffed, a genuine issue of material fact remains for the trier of fact. Defendants are not entitled to qualified immunity on this aspect of Watkins's claim at this time.  Therefore, as to Watkins's § 1983 Excessive Force claim for the period of time *after* he was handcuffed, summary must be denied.

## IV.     Conclusion

For the foregoing reasons, the Early Dispositive Motion filed by Defendants Greg Brundage, Steve Hensley, John Carr, and Kelly Johnson (Doc. # 63) is due to be granted in part and denied in part.  Summary judgment is due to be granted on all claims against the Officer Defendants except Watkins's § 1983 Excessive Force claim for events occurring after he was handcuffed.

**DONE** and **ORDERED** this _____26th_____ day of March, 2012.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE